UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA J.H.,

                              Plaintiff,

v.                                                    5:24-CV-01247
                                                          (DNH/ML)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                              OF COUNSEL:


HILLER COMERFORD                          JUSTIN M. GOLDSTEIN, ESQ.
INJURY & DISABILITY LAW
 *Attorneys for Plaintiff*
6000 North Bailey Avenue - Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.               MOLLY CARTER, ESQ.
 *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

### REPORT-RECOMMENDATION

Plaintiff Lisa J.H. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"). (Dkt. No. 1.) This matter was referred to me for Report

and Recommendation by the Honorable David N. Hurd, Senior United States District Court

Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. Nos. 3, 4.) This case has

proceeded in accordance with General Order 18.  Currently before this Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10, 14, 15.)  For the reasons set forth below, this Court recommends that the District Court grant Defendant's motion for judgment on the pleadings and affirm the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On November 23, 2021, Plaintiff protectively filed applications for DIB and SSI, each alleging disability dating from October 18, 2021. (Administrative Transcript ("T.") 371-389.) Her applications were denied initially on April 1, 2022, and her request for administrative reconsideration was denied on August 5, 2022. (T. 87-174., 202-225)  Plaintiff's request for a hearing was granted. (T. 284-299.)  On July 18, 2023, Plaintiff and vocational expert ("VE") Robert Baker testified by telephone before Administrative Law Judge ("ALJ") Jennifer Gale Smith. (T. 54-86.)  The ALJ held a supplemental hearing on December 12, 2023 to hear the testimony of Plaintiff and VE Christine Ditrinco. (T. 38-53.)

The ALJ issued an unfavorable decision on December 20, 2023. (T. 14-37.)  The Appeals Council denied Plaintiff's request for review on August 16, 2024, and Plaintiff commenced this proceeding on October 11, 2024 to challenge the Commissioner's denial of disability benefits. (Dkt. No. 1.)

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.*

2

*Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court

3

cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B.    Standard for Benefits[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments;  (3) whether the impairment meets or

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

equals the severity of the specified impairments in the Listing of
Impairments;  (4) based on a "residual functional capacity"
assessment, whether the claimant can perform any of his or her
past relevant work despite the impairment; and (5) whether there
are significant numbers of jobs in the national economy that the
claimant can perform given the claimant's residual functional
capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.    FACTS

As of the date of the ALJ's decision, Plaintiff was 58 years old. (T. 58, 373.)  She is a

high school graduate whose work history includes more than thirty years in civil service

secretarial and human resources positions with multiple state government agencies. (T. 42-43,

59-62.)  She testified that she was eligible for full state retirement benefits when she stopped

working in April 2021, and her decision to retire was partially motivated by the onset of health

problems, including back pain. (T. 60-61, 649-650.)

Plaintiff sought treatment after her back pain worsened in August 2021, including

prescription pain medication, physical therapy, epidural injections, and surgery. (T. 647, 650,

659.)  Although May 2022 back surgery initially alleviated some of her symptoms, Plaintiff still

experienced shooting pain, numbness, and tingling that radiated from her lower back down her

legs, and the same sensation radiating from her neck down into her shoulders, arms, and hands.

(T. 64, 659.)  She reported difficulty sitting for long periods, including driving, and a need to

alleviate the pain by regularly changing positions including reclining in a chair, walking around,

or laying down flat. (T. 65-66, 659.)

The record includes Plaintiff's relevant medical history.  Rather than summarizing the

records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

IV.    **THE ALJ'S DECISION**

As an initial matter, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2027. (T. 19.)  Based upon her review of the administrative record, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of October 18, 2021. (T. 20.)  At step two, the ALJ found that Plaintiff has the following severe impairments: "obesity, herniated disc of the left L5-S1 level with compression of the nerve root, status-post left L5 laminectomy and microdisectomy, and cervical degenerative disc disease." (T. 20-22.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root) and Listing 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina). (T. 22-23.)  Next, the ALJ found that Plaintiff could perform less than the full range of sedentary work. (T. 23-30.) Specifically, the ALJ found that Plaintiff:

> should not climb ladders, ropes, and scaffolds; [Plaintiff] can occasionally balance as defined in the SCO, kneel, crouch, crawl, climb ramps and stairs, and stoop; [she] can frequently reach, handle, finger, and feel; [she] should be able to stand and stretch her legs every hour for five minutes, but she can stay on-task at the work station during the position change; and [she] should be able to walk around during ordinary breaks and the lunch hour.

(T. 23.)

In making the RFC determination, the ALJ stated that she considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p. (*Id*.)  The ALJ further stated that she considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. §§ 404.1520c and 416.920c. (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations raised during the hearing and in the overall administrative record and found them "not entirely consistent with the medical evidence and other evidence in the record . . ." (T. 28.)

At step four, the ALJ relied on VE Ditrinco's testimony to find Plaintiff capable of performing her past relevant work as a human resources clerk. (T. 30-31.)  Accordingly, the ALJ found that Plaintiff had not been disabled from her alleged onset date of October 18, 2021 through the date of the ALJ's decision. (T. 31.)

## V.    ISSUES IN CONTENTION

Plaintiff generally argues that the ALJ failed to identify substantial evidence supporting her RFC determination and failed to properly develop the record regarding Plaintiff's physical impairments.  In particular, Plaintiff contends that the ALJ failed to adequately explain her reasoning regarding Plaintiff's need to change positions between sitting and standing, Plaintiff's ability to stay on task during these position changes, and Plaintiff's need to walk away from her workstation outside regularly scheduled breaks. (Dkt. No. 10 at 10-11, 14-24.)  In addition, Plaintiff contends that the ALJ failed to resolve substantive conflicts between the July 18, 2023 hearing testimony of VE Robert Baker and the December 12, 2023 supplemental hearing testimony of VE Christine Ditrinco. (Dkt. No. 10 at 11-14.)  The Commissioner contends that the ALJ's analysis of the medical opinion evidence, Plaintiff's testimony, and the ultimate disability

determination were supported by substantial evidence, and that the ALJ was not required to resolve the purported conflicts in the VE testimony. (Dkt. No. 14 at 6-13.)

For the reasons set forth below, this Court recommends that the District Court deny Plaintiff's motion for judgment on the pleadings, grant Defendant's motion for judgment on the pleadings, and affirm the Commissioner's decision.

## VI. RFC AND MEDICAL OPINION EVIDENCE

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An

ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588; *LaPorta*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources,

---

[2]  Plaintiff's applications were protectively filed on November 23, 2021. (T. 371-389.) Thus, the new regulations apply in this case.

9

deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

10

B.     **The ALJ's Error Regarding Plaintiff's Ability to Remain on Task When Changing Positions During the Workday Does Not Require Remand.**

It is well-established that ALJs are not required to "reconcile every conflicting shred of medical testimony." *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981). However, it is equally true that ALJs must discuss the evidence and factors "crucial" to the disability determination with "sufficient specificity to enable [this Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983)). Put another way, an ALJ must "build an accurate and logical bridge from the evidence to her conclusion to enable a meaningful review." *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

With that in mind, courts have consistently found that a very specific or narrowly tailored RFC assessment must be based on evidence in the record, not on "the ALJ's own surmise." *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (remanding where there was no record evidence to support very specific RFC finding that Plaintiff would be off task for just six minutes every hour); *Mariani v. Colvin*, 567 Fed. App'x. 8, 10 (2d Cir. 2014) (summary order) (remanding where the record contained no evidence to support ALJ's determination that plaintiff's carpal tunnel syndrome still allowed use of his dominant hand for half the workday).

Since December 2021, Plaintiff received treatment for her back pain at Upstate Brain & Spine Center. (T. 659-679, 766-768, 907-911.) Brenda Schader, a nurse practitioner at that practice whose treatment notes are included in the record, issued a letter opinion on July 20, 2023 addressing Plaintiff's physical limitations. (T. 766-768, 795.) In addition to opining that Plaintiff should not lift more than ten pounds, NP Schader opined that Plaintiff should "be

11

allowed to have a break to stand and stretch her legs/walk for 5 minutes hourly when she is required to sit for extended periods of time." (T. 795.)

The ALJ deemed NP Schader's opinion "to have some persuasive value," explaining that "the residual functional capacity that the undersigned has formulated for the claimant, which restricts her to sedentary exertional work, but allows her to stand and stretch her legs every hour for five minutes, as well as walk around during ordinary breaks and the lunch hour, is generally consistent" with the treating provider's opinion.  (T. 29.)  The ALJ also found the opinion to be supported by NP Schader's June 13, 2023 physical examination report describing decreased strength in the upper extremities, poor balance as demonstrated by a "positive sway during Romberg testing," and an antalgic gait, but she noted that subsequent examinations by other providers showed improvement in Plaintiff's strength, walking, and overall coordination. (T. 29, 766-768, 907-911.)

None of the other medical opinions in the record address Plaintiff's need to change position.  Dr. Elke Lorensen, who performed a consultative physical examination of Plaintiff in March 2022, opined that Plaintiff had "no gross limitations for sitting, standing, walking, and using the hands" and "[m]ild limitations for bending, lifting, carrying, and climbing." (T. 549-551.)  Dr. A. Susarla, who reviewed Plaintiff's then-current medical records in March 2022, opined that Plaintiff could sit for about six hours total over the course of a workday, and could stand and/or walk for the same approximately six hour total each workday with no postural limitations. (T. 94.)  Dr.A. Saeed reviewed the same record in February 2021 as part of the administrative reconsideration process and affirmed Dr. Susarla's opinion regarding Plaintiff's ability to sit, stand, and walk for extended periods, but opined that Plaintiff was limited to occasional crouching, crawling, and climbing of ramps, stairs, ladders, ropes, or scaffolds and

frequent stooping/bending or kneeling. (T. 119, 121-124.)   The ALJ found each of these opinions to "have some persuasive value." (T. 29.)  She explained that the opinions from Dr. Susarla and Dr. Saeed provided "an overly optimistic estimate of [Plaintiff's] ability to perform work-related activities" that was inconsistent with the subsequent medical record and Plaintiff's testimony. (*Id.*)  The ALJ also rejected Dr. Lorensen's opinion that Plaintiff had no gross limitations for standing, walking, and using the hands as unsupported by the consultative examination results and the broader medical record. (T. 29, 550-551.)

While the ALJ states that her RFC determination is "generally consistent" with NP Schader's opinion, she failed to identify any basis in the record for her conclusion that Plaintiff can remain on task at her workstation when changing positions. (T. 28-29.)  Neither the Commissioner's brief nor this Court's searching review have likewise identified any record evidence to support this portion of the RFC.  This suggests that the ALJ improperly based this portion of the RFC determination upon her "own surmise."  *See Cosnyka*, 576 F. App'x at 46; *John S., v. Bisignano*, No. 3:24-CV-334 (BKS/MJK), 2025 WL 2201107, at *7 (N.D.N.Y. June 13, 2025), *rep't and rec. adopted*, 2025 WL 2197149 (N.D.N.Y. Aug. 1, 2025) (remanding where RFC determination that plaintiff "requires a brief 2-3 minute change in position after standing or walking for 30 minutes but retains the ability to remain on task" appeared to be "created . . . out of whole cloth"); *Shawn A*, 2023 WL 2242085, at *4 (remanding to allow "for a more complete analysis of the propriety of and parameters for a sit/stand option" where ALJ failed to identify record support for RFC determination that plaintiff "requires a brief, 1 to 2 minute change in position after sitting, standing, or walking for 30 minutes, but retains the ability to remain on task while changing positions.").

13

Thus, this Court agrees with Plaintiff's contention that the ALJ erred by failing to explain (1) the record evidence supporting her highly specific RFC determination that Plaintiff could remain on-task while changing positions, and (2) her reasons for rejecting NP Schader's more narrow opinion that Plaintiff was limited to work that allowed her to "have a break to stand and stretch her legs/walk for 5 minutes hourly." (Dkt. No. 10 at 14-16.)  However, this Court also agrees with the Commissioner's contention that the ALJ's error was harmless under the facts and circumstances of this case. (Dkt. No. 14 at 13-14.)

At the December 12, 2023 supplemental hearing, VE Christine Ditrinco testified, in the course of questioning from both the ALJ and Plaintiff's non-attorney representative, that even if the ALJ had fully adopted NP Schader's opinion regarding the change of positions and allowed Plaintiff to be off-task when stretching her legs or walking for five minutes each hour, Plaintiff would still be able to perform her past work of human resource clerk. (T. 48-52.)  Indeed, the ALJ's decision cited VE Ditrinco's analysis on this issue, noting "the testimony at the supplemental hearing by the vocational expert, who stated that, even if [Plaintiff's] need to change positions for five minutes each hour took [her] off-task, the amount of her off-task time would still be within the customary off-task tolerance allowed by the employers as testified to by both vocational experts." (T. 29.)

In particular, VE Ditrinco explained that based on her experience, "although the five minutes every hour certainly you'd indicated a person would be on task, even so it'd still fall under off-tasks tolerances." (T. 48.)  The VE went into further detail later in her testimony:

Q:     Now what is the tolerance for off tasks and absences?

A:     Based on my experience as to some Department of Labor studies in or around 14% of the workday is acceptable, 15% or more considered excessive and work preclusive.  And in and around a day a month absence

14

is fairly acceptable, twice a month or more are considered excessive and work preclusive.

Q:     So even if the claimant did not stay on task, if she had to walk around a bit during the five minutes, and even assuming - - I will be frank with you. Our last VE said only 10% off task. But even if she had to walk around for five minutes, it would still be within that off-task/absence; correct? Because five minutes would be - -

A:     That's - -

Q:     Is that - -

A:     - - that's correct. Because, you know, 14% an hour is in or around nine or ten minutes an hour. And the only time I consider 10% threshold for off task is if you're on a production rate pace or quota job where you have to, sort of like the I love Lucy, keep up with the belt.

(T. 50-51.)

Other portions of VE Ditrinco's testimony further clarified her opinion that the five minutes for stretching or standing set out in the ALJ's RFC determination is indistinguishable from five minutes off task:

Q:     Okay. So other than off task and absences, has your testimony been consistent with the DOT and your knowledge of how the job is required or performance and your knowledge of the past relevant work?

A:     Correct. And I would just say that I certainly viewed your question about the standing more as an off task and not a sit/stand option, so just to be consistent.

(T. 51.)

Based on this testimony, this Court finds that even if the ALJ had adopted NP Schader's opinion in its entirety, and issued an RFC allowing Plaintiff to be off-task by walking away from her work area for five minutes each hour, her ultimate disability determination would not change. Therefore, the ALJ's error was harmless. *See Jennifer M. v. O'Malley*, No. 6:23-CV-494 (GTS/MJK), 2024 WL 5378976, at *8 (N.D.N.Y. July 23, 2024), *rep't and rec.*, 2025 WL

354093 (N.D.N.Y. Jan. 31, 2025) (finding that even if ALJ erred in discounting a restrictive medical opinion, such error was harmless because the VE identified representative occupations that could still be performed with those additional restrictions); *Brian C. v. Comm'r of Soc. Sec.*, No. 5:20-CV-534 (DJS), 2021 WL 1946503, at *5 (N.D.N.Y. May 14, 2021) (finding any error in rejecting medical opinion that Plaintiff could not hold her head in a fixed position would be harmless because vocational expert had testified that such restriction would not alter her opinion that there were multiple jobs Plaintiff could still perform); *Burkey v. Colvin*, 284 F. Supp. 3d 420, 424 (W.D.N.Y. 2018) (finding that error in failing to incorporate physician's opinion regarding plaintiff's need to change positions every thirty minutes would be harmless because the VE testified that there are jobs existing in significant numbers in the national economy that can still be performed with that additional limitation); *see also Dukes v. Comm'r of Soc. Sec.*, No. 6:19-CV-06025 (EAW), 2020 WL 5651610, at *5 (W.D.N.Y. Sept. 23, 2020) ("even had the ALJ adopted every limitation identified by Dr. Chu, it would not have changed the conclusion that Plaintiff was capable of work as a cashier II, which is sufficient to demonstrate that she is not disabled as defined in the Act.").

### C.    The ALJ Was Not Required to Reconcile Purported Conflicts Between the VE Testimony from the Original and Supplemental Hearing.

As previously discussed, a different VE testified at each of the administrative hearings. Plaintiff contends that the ALJ erred by failing to reconcile a purported conflict between the two experts.  In particular, Plaintiff points to this exchange between her non-attorney representative and VE Baker at the July 18, 2023 hearing:

Q:     Mr. Baker, if [Plaintiff] was able to do the full range of sedentary work but she needed to walk away from the workstation periodically whenever she saw fit, would that eliminate her ability to perform any of her past relevant work?

A:      Yeah, that's not something that's typically allowed by any kind of competitive employment in the U.S. economy.  That's extra breaks and that would have to be arranged through accommodation.

(T. 82.)

The ALJ then followed up on this point:

Q:      Okay.  Then I just want to make sure I understand your testimony.  She can do it whenever she saw fit as long as it didn't render her off task more than 10%, is that a fair - - because that would make your two pieces of testimony consistent with one another?[3]

A:      Well, not necessarily. I wouldn't say that.

Q:      Okay.  Explain.

A:      And the reason why is because walking away from your workstation is considered a break.

Q:      I see.

A:      You know, being off task is you're still there, but you're doing other things than what you should be doing.  So you know, the extra breaks are what really is going to be unacceptable.

Q:      Okay.  So walking away from the workstation whenever she sees fit is work preclusive?

A:      Yes.

(T. 82-83.)

Plaintiff contends that VE Baker's testimony regarding excessive breaks directly conflicts with VE Ditrinco's analysis that Plaintiff would merely be off-task if she was walking away from her work station for five minutes each hour, as described by NP Schader. (Dkt. No. 10 at 12.)  A 2017 case, *Nesbit-Francis v. Comm'r of Soc. Sec.*, No. CV 15-1703, 2017 WL 590327

---

[3] VE Baker had previously testified that the maximum allowable tolerance for time off-task would be 10% of the workday. (T. 81.)

(E.D.N.Y. Feb. 14, 2017), considered this very issue, and its cogent analysis is worth repeating in full:

> Plaintiff contends that the ALJ did not resolve the alleged inconsistency between [VE] Mansey's testimony and [VE] Davis's testimony. Plaintiff argues that failure to resolve such a conflict in the record amounts to a reversible error.
>
> In fact, there is no such discrepancy. Each expert was responding to the RFC assessment hypothetical presented. Mr. Mansey offered his opinion based on a hypothetical individual capable of work that is routine, no more than moderately complex, and low stress. [citation omitted] But this was not the hypothetical RFC presented to Mr. Davis (and ultimately found by the ALJ). The testimony of Mr. Davis at the second hearing was based upon an individual who could perform moderately complex work that was moderately stressful. (Tr. 130) Simply put, there is no unresolved conflict requiring remand.

*Nesbit-Francis*, 2017 WL 590327, at *10.

The same reasoning applies in this case, as this Court fails to see an actual conflict arising where VE Baker and VE Ditrinco were responding to distinctly different hypotheticals. VE Baker discussed excessive breaks in the context of a hypothetical individual described by Plaintiff's non-attorney representative as someone who "needed to walk away from the workstation periodically **whenever she saw fit**." (T. 57.) (emphasis supplied). At the time of VE Baker's July 18, 2023 testimony, the record did not include NP Schader's July 20, 2023 opinion. (T. 57, 795.) The hypothetical presented to VE Baker by Plaintiff's representative involved an individual with unlimited freedom to leave their workspace to walk for an indeterminate period of time. Thus, it went well beyond NP Schader's subsequent opinion that Plaintiff required the ability "to have a break to stand and stretch her legs/walk for 5 minutes hourly when she is required to sit for extended periods of time." In contrast, VE Ditrinco testified in response to the ALJ's narrowly drawn hypothetical describing an individual who merely needed to be able to "stand and stretch her legs every hour for five minutes." (T. 795.) Although subject to cross-

18

examination by Plaintiff's representative, VE Ditrinco was never asked to consider a hypothetical individual who required the freedom to walk away from their work area "whenever she saw fit." (T. 51-52, 57.)

Thus, the ALJ had no duty to reconcile VE testimony that was based upon different hypotheticals. This Court also notes that the ALJ based her hypothetical to VE Ditrinco on a more fully developed record than was available at the time of VE Baker's testimony. Accordingly, this Court does not recommend remand due to any purported conflict in the testimony of VE Baker and VE Ditrinco.

> **D.    Plaintiff's Remaining Challenges to the ALJ's Development of the Record and Consideration of the Evidence Do Not Present Grounds for Remand.**

Beyond the specific challenges to time off-task and the ALJ's evaluation of the VE testimony, Plaintiff presents more general challenges to the ALJ's development of the record and evaluation of the medical and testimonial evidence, but this Court finds no grounds to recommend remand on these issues.

> **1.    The ALJ adequately developed the administrative record.**

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the claimant is represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). In

furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination.  20 C.F.R. §§ 404.1512(e), 416.912(e).  Although the ALJ must attempt to fill in any obvious gaps in the administrative record, "where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records."  *Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350, 2019 WL 666949, at *3 (W.D.N.Y. Feb. 19, 2019) (quoting *Johnson v. Comm'r of Soc. Sec*., No. 1:17-CV-06350, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018)).

Here, the ALJ recognized during the July 18, 2023 hearing that the record did not include recent treatment notes related to Plaintiff's neck pain, and granted the request from Plaintiff's counsel to leave the record open to allow Plaintiff an opportunity to supplement the record. (T. 71-72, 85.)  This allowed Plaintiff to provide additional treatment records along with NP Schader's July 20, 2023 opinion. (T. 41, 769-911.)  At the supplemental hearing, the ALJ allowed Plaintiff an opportunity to testify regarding her current physical functional limitations and her decision to postpone scheduled neck surgery. (T. 43-46.)  The ALJ also solicited VE Ditrinco's testimony to address revised hypothetical RFCs drawn from this new documentary and testimonial evidence. (T. 46-52.)  During the December 2023 hearing, Plaintiff's representative confirmed that the record was complete.[4] (T. 41, 52.)

It is well-established that "[t]he ALJ's duty to develop the record is not infinite, and where, as here, evidence in hand is consistent and sufficient to determine whether a claimant is

---

[4] Plaintiff's representative originally advised the ALJ that the record was complete at the July 18, 2023 hearing. (T. 57-58.)  This Court has not held this misstatement against Plaintiff.

disabled, further development of the record is unnecessary." *Tatelman v. Colvin*, 296 F. Supp.3d 608, 612 (W.D.N.Y. 2017) (citing *Kinslow v. Colvin*, No. 5:12-cv-1541 (GLS/ESH), 2014 WL 788793 at \*4 n.10 (N.D.N.Y. Feb. 25, 2014)) (internal quotation marks omitted). Here, the ALJ's decision demonstrates her analysis of the relevant treatment history, as well as her consideration of the relevant medical opinions. (T. 24-29.)

There are no obvious gaps in the administrative record, and Plaintiff has not identified any missing records beyond speculation that an additional medical opinion would clarify Plaintiff's functional limitations. (Dkt. No. 10 at 23.) Such speculation is insufficient to impose an obligation on the ALJ to seek additional medical opinions. *See Ramos v. Comm'r of Soc. Sec.*, No. 24-2420, 2025 WL 1720393, at \*1 (2d Cir. June 20, 2025); *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." (quotation marks omitted)). Indeed, after Plaintiff was granted an opportunity to supplement the record during the administrative hearing process, her representative confirmed that the record was complete. *See Moody v. Comm'r of Soc. Sec.*, 848 F. App'x 470, 471 (2d Cir. 2021) (finding the record adequately developed where counsel had additional time to supplement the record, submitted additional documentation, and did not indicate that there were outstanding documents); *Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 44 (2d Cir. 2020) (finding ALJ adequately developed record where he confirmed with plaintiff's counsel that record was complete).

## 2. The Remainder of the ALJ's RFC Determination is Supported by Substantial Evidence.

Having adequately developed the record, the ALJ then resolved conflicts between the

objective medical record, medical opinion evidence, and hearing testimony by placing the greatest reliance on that evidence that she deemed most consistent with Plaintiff's overall treatment record and activities. *See Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole). "There is no requirement that the ALJ pick one RFC [opinion] and use that particular evaluation in its entirety." *Alexandrea R.R. v. Berryhill*, No. 15-CV-756 (FPG), 2019 WL 2269854, at *6 (N.D.N.Y. May 28, 2019). Rather, "it is the ALJ's responsibility to choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment." *Id.*

The ALJ's decision discusses the available evidence regarding Plaintiff's ability to sit, stand, and walk for extended periods, potential manipulative and postural limitations, and Plaintiff's documented response to treatment. (T. 24-30.) In light of this analysis, this Court concludes that, with the exception of the harmless error discussed above, the ALJ marshalled substantial evidence to support her RFC determination that Plaintiff could perform less than the full range of sedentary work.

At best, Plaintiff's general challenge to the RFC determination is "premised upon a disagreement over how the ALJ resolved arguably conflicting evidence" about Plaintiff's physical functional limitations and does not present independent grounds for remand. *See Kimball v. Comm'r of Soc. Sec.*, No. 6:14-CV-0698 (LEK/ATB), 2015 WL 4251163, at *9 (N.D.N.Y. July 13, 2015). This Court will not reweigh the evidence presented to the ALJ. *See Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a

plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *rep't-rec. adopted*, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

ACCORDINGLY, it is

RECOMMENDED that the Commissioner's decision be **AFFIRMED**, Defendant's motion for judgment on the pleadings (Dkt. No. 14) be **GRANTED**; Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be **DENIED**; and Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     November 18, 2025
           Binghamton, NY

Miroslav Lovric
U.S. Magistrate Judge